IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2002 Session

BOBBY BOBBITT, ET AL. v. DOROTHY B. SHELL, COMMISSIONER, ET AL.

A Direct Appeal from the Chancery Court for Davidson County
No. 98-1682-I    The Honorable Irvin H. Kilcrease, Jr., Chancellor

No. M2002-00512-COA-R3-CV - Filed February 4, 2003

Appellants, state employees, were subjects of a Reduction In Force ("RIF") and appeal the order of the chancery court dismissing their petition for review of the Commissioner of Personnel's decision that their respective positions were correctly resolved in the RIF.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and PATRICIA J. COTTRELL, J., joined.

Larry D. Woods, Nashville, For Appellants, Bobby Bobbitt, James Donehew, Everett Jones, Douglas Lawson, James McCallie, and Dwight Shelton

Paul G. Summers, Attorney General and Reporter, William J. Marett, Jr., Senior Counsel, Nashville, For Appellees, Dorothy B. Shell, Commissioner of the Tennessee Department of Personnel and Department of Personnel

OPINION

Petitioners/Appellants appeal the Order of the Chancery Court affirming the decision of the Department of Personnel Commissioner relating to a reduction in force that affected their employment. Bobby Bobbitt ("Mr. Bobbitt"), James Donehew ("Mr. Donehew"), Everett Jones (Mr. Jones"), Douglas Lawson ("Mr. Lawson"), James McCallie ("Mr. McCallie"), Dwight Shelton ("Mr. Shelton"), and Martin Redmond ("Mr. Redman" and, together with Messrs. Bobbitt, Donehew, Jones, Lawson, McCallie, and Shelton "Appellants," or "Petitioners") were regular state employees working as Forestry Aides or Forestry Technicians. In 1997, shortfalls in state revenues forced state government to undergo a RIF. This RIF resulted in the abolishment of 134 positions in the Department of Agriculture ("Agriculture"). The Appellants' positions in the Forestry Division of the department were part of this RIF.

Appellants challenged Agriculture's decision to abolish their positions and the implementation of "competitive areas" used to administer the "bumping and retreating" procedures affecting their abolished positions.[1] Specifically, Appellants assert that district foresters were given sole, unsupervised discretion to determine what positions would be eliminated, and to target the most highly paid positions to be abolished. Appellants initially filed grievance actions against Agriculture and proceeded to a Level IV hearing within the department. Agriculture's hearing officer determined that the grievances resulted from the proper implementation of an approved RIF plan and matters relating to discretionary agency and program management. As such, these matters were not grievable under the Tennessee Department of Personnel's Rule 1120-11-.08(8) and (14).[2]

Appellants Donehew and McCallie requested a Level V hearing before the Civil Service Commission. Their requests were denied as non-grievable.[3] On March 5, 1998, Appellants petitioned Eleanor Yoakum, the Personnel Commissioner at the time, for a Declaratory Order pursuant to T.C.A. § 4-5-223.[4] Due to a clerical error, the Petition for Declaratory Order was not heard within the sixty (60) day time limit. Consequently, the Appellants filed a Petition for Review

---

[1] The Department of Agriculture sub-divides the state into six forestry districts. A district forester administers each of the multi-county districts. The "competitive areas" for Division of Forestry are the various forestry districts across the state. At issue in this case are Forestry Districts 1 and 2.

[2] 1120-11-.08 EXCEPTIONS AND NON-GRIEVABLE MATTERS...
> (8) Actions resulting from reductions in force when an approved reduction in force plan was followed...
> (14) matters relating to internal agency or program management which are based on discretionary decision making.

[3] *Id.*

[4] T.C.A. § 4-5-223 provides, in pertinent part, as follows:

> Declaratory orders.–(a) Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency. The agency shall:
>
> (1) Convene a contested case hearing pursuant to the provisions of this chapter and issue a declaratory order which shall be subject to review in the Chancery Court of Davidson County, unless otherwise specifically provided by statute, in the manner provided for the review of decisions in contested cases; or
>
> (2) Refuse to issue a declaratory order in which event the person petitioning the agency for a declaratory order may apply for a declaratory judgment as provided in § 4-5-224.
>
> *                    *                    *
>
> (c) If an agency has not set a petition for a declaratory order for a contested case hearing within sixty (60) days after receipt of the petition, the agency shall be deemed to have denied the petition and to have refused to issue a declaratory order.

in the Chancery Court of Davidson County on June 1, 1998. Appellants also filed a motion for a contested case hearing and, by Order dated November 23, 1998, the chancery court remanded the matter to the Department of Personnel ("Personnel") to conduct a hearing, pursuant to T.C.A.§ 4-5-223; however, the court retained jurisdiction over the matter, anticipating an appeal from the final order.

The administrative proceeding was heard on August 24-25 and October 11-12, 1999 before an administrative judge and, on June 19, 2000 and an Initial Order was entered. The Initial Order found in favor of Petitioners and ordered that Petitioners be reinstated with backpay. On June 30, 2000, Agriculture petitioned for agency review of the Initial Order pursuant to T.C.A. §§ 4-5-314 and 4-5-315. On May 21, 2001, the current Personnel Commissioner, Dorothy B. Shell, issued a Final Order, which vacated the Initial Order, and upheld the actions of Agriculture. On June 21, 2001, Appellants filed a Petition for Review, which was subsequently consolidated with the original action on August 29, 2001.

The matter was heard by the chancery court on January 18, 2002. On February 12, 2002, the trial court entered an Order of Dismissal, finding that "Respondents properly administered the reduction in force pursuant to state law and regulations, and that petitioners were afforded due process."

Appellants appeal and raise two issues for our review as stated in their brief:

> I. Whether the termination and layoffs of petitioners violated their due process rights since the decision making agency prejudged the facts and the law or alternatively whether the decision making agency presented the appearance to a reasonable person of having prejudged the facts and the law.

> II. Whether the termination and layoffs violated petitioners' statutory rights, exceeded respondents' statutory authority, were arbitrary, capricious and abusive, and whether the record lacks substantial and material evidence to support the decision below.

Before addressing the issues before us, we first note that the Chancellor's review of Personnel's Final Order in this matter is governed by T.C.A. § 4-5-322(h) (Supp. 2002), which sets forth the standard of review on appeal of administrative proceedings as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

> (1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

This Court's scope of review is the same as in the trial court: to review the findings of fact of the administrative agency upon the standard of substantial and material evidence. *DePriest v. Puett*, 669 S.W.2d 669 (Tenn. Ct. App. 1984). Although T.C.A. § 4-5-322 does not clearly define "substantial and material" evidence, courts generally interpret the requirement as requiring "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)(citations omitted).

While this Court may consider evidence in the record that detracts from its weight, the Court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. *See* T.C.A. § 4-5-322(h); *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965). The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *See Pace*, 390 S.W.2d at 463.

**Whether the termination and layoffs of petitioners violated their due process rights since the decision making agency prejudged the facts and the law or alternatively whether the decision making agency presented the appearance to a reasonable person of having prejudged the facts and the law.**

Appellants assert that Personnel had a direct pecuniary interest in the outcome of this proceeding (i.e. that it was in the interest of the Department to terminate the highest paid employees in order to save money). Furthermore, Appellants argue that the action and order by Personnel violates their due process rights in that Personnel was allowed to judge its own conduct and make a decision in its own favor. We cannot agree. As to the pecuniary interest of Personnel, we find the Appellants' argument tenuous at best. Under the facts of this case, the person making the decision (i.e. the Commissioner of Personnel) has no pecuniary interest in the outcome of the case. Although the coffers of the State may be affected by the RIF, we see no evidence in the record to support a finding that either the Department of Personnel or the Commissioner had a substantial pecuniary interest in the outcome of the proceedings.

Furthermore, the Commissioner of Personnel does not have final review in these matters. T.C.A. § 4-5-322(h), cited *supra*, empowers the chancery court to correct any abuse of discretion or injustice that arises from the decision of the agency. The remedies provided by the Tennessee Uniform Administrative Procedures Act are sufficient to satisfy due process. ***See Watts v. Burkhart***, 854 F.2d 839, 841 (6th Cir. 1988). This issue is, therefore, without merit.

**Whether the termination and layoffs violated petitioners'
statutory rights, exceeded respondents' statutory authority,
were arbitrary, capricious and abusive, and whether the record
lacks substantial and material evidence to support the decision below.**

Appellants contend that the state of Tennessee violated T.C.A. § 8-30-320 and T.C.A. § 8-30-101(a)(7) to the extent that Agriculture used any definition of competitive area different from the definition found in T.C.A. § 8-30-101(a)(7), which reads as follows:

> "Competitive area" means a geographic organizational area, designated by the appointing authority, within which reduction in force competition takes place. Whenever feasible, the appointing authority should make the competitive area be the county in which the employee works and each county that touches the county in which the employee works

T.C.A. § 8-30-320 was the State's approved RIF plan for the 1997 RIF. The statute reads, in pertinent part, as follows:

> **Layoffs–Notice–Abolishment of positions–Placement.**–(a)(1)(A) In accordance with the rules, an appointing authority may lay off an employee in the career service whenever the appointing authority deems it necessary by reason of shortage of work or funds, or the abolition of a position or other material change in duties or organization.
> (B) Any career employee whose position is abolished because of a reduction-in-force shall be provided written notice containing the reason for the layoff at least ninety (90) days in advance of the effective date of the position abolishment...
> (2) In determining the order of layoffs, departmental and total state service shall be the predominant factors. Departmental service shall be counted on a year-for-year basis and other state service shall be added on a year for one (1) year basis to determine total seniority.

In addition, Agriculture had an approved RIF plan on file with Personnel. This RIF plan reads, in pertinent part, as follows:

DEFINITIONS FOR REDUCTION IN FORCE

**"Bumping"** means the action by which an employee of higher retention level (more state seniority) displaces (takes the job of) an employee of lower retention level (less state seniority) in the same job classification. Example–a Correctional Officer with 20 months state service would bump a Correctional Officer with 18 months of state service.

**"Competitive area"** means a geographic organizational area, designated by the appointing authority, within which reduction in force competition takes place. Whenever feasible, the appointing authority should make the competitive area be the county in which the employee works and each county that touches the county in which the employee works. (The Department of Personnel maintains the competitive area designations for each department. These designations can be county, region, grand division, etc.).[5]

\*                              \*                              \*

LAYOFF TO DO LIST

1. Identify the position(s) to be abolished.

2. List all employees by months of total state service by classification in the competitive area. Add 60 months to those who were eligible for veterans preference when hired.

3. Notify the person(s) whose position(s) is being abolished.

4. Notify the least senior (lowest <u>total</u> state service) employee that he/she may be affected by a layoff. If there is a vacant position it is always least senior.

5. Look at bumping and retreating rights for all affected employees. For those employees with no rights, review vacant positions to see if there are other placement opportunities.

6. Career service employees must be given 90 days written notice in advance of the position abolishment. Advise them to fill out an

---

[5] With the exception of the parenthetical, this definition is taken verbatim from T.C.A. § 8-30-101(a)(7).

application to be evaluated by the Department of Personnel so they may be assisted with other employment...

We find no discrepancy between the definition of competitive area used in T.C.A. § 8-30-101(a)(7) and the definition contained in the RIF plan on file with Personnel. Although the legislature favors designation of competitive areas composed of "the county in which the employee works and each county that touches the county in which the employee works," we note that such composition is required only when feasible. Turning to the record in this case, we find that, as of December 1996, few counties, within the two Forestry Districts at issue in this case, had more than one position in each classification.[6] Consequently, composition of competitive areas by county would not be feasible in this instance. Under the facts of this case, the designation of Forestry Districts as competitive areas complies with T.C.A. § 8-30-101(a)(7).

Appellants next argue that each of them was more senior by definition under T.C.A. § 8-30-320(a)(2) than at least one other employee of the Department in the same job classification. T.C.A. § 8-30-320 addresses the rights of employees who are subject to layoffs or other RIFs. The authority to determine how these statutes are carried out is vested with Personnel. *See Tennessee Dept. Of Mental Health & Mental Retardation v. Allison*, 833 S.W.2d 82 (Tenn. Ct. App. 1992). T.C.A. § 8-30-202 encapsulates the functions of the commissioner of personnel and reads, in pertinent part, as follows:

> (a) The commissioner, as executive head of the department of personnel, shall direct and supervise all its administrative and technical activities with respect to state service. In addition to the other duties imposed upon the commissioner by law, the commissioner has the duty to...
>
> (6) With respect to the executive service:
> (A) Prescribe rules and regulations for the administration and execution of this chapter...

The determination of the positions to be abolished is clearly a matter within the experience and expertise of the administrative agency. So long as there is a sound basis in the record to support the agency's decision, this court must defer to that decision. *See Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965). The record in this case does not support a finding that the agency exceeded its statutory authority.

During the course of the 1997 RIF, we find that the Appellants were afforded all due process considerations under T.C.A. and the rules promulgated by Agriculture and approved by

---

[6] As of December 1996, Forestry District 1 had 14 positions classified as Forestry Aid I, 9 positions classified as Forestry Aid II, and 8 positions classified as Forestry Technician. Forestry District 2 had 16 positions classified as Forestry Aid I, 20 positions classified as Forestry Aid II, and 10 positions classified as Forestry Technician.

Personnel in compliance with T.C.A. Appellants received timely notice of the fact that their positions had been identified for abolishment. They were notified of their bumping and retreating rights within their competitive areas. Agriculture made efforts to reassign the Appellants to comparable jobs. Mr. Lawson exercised his right to bump to a vacant position in Sullivan County where he continues his employment with Agriculture. Messrs. Bobbitt, Jones, Donehew, and McCallie declined their bumping options. Having refused their bumping rights, these Appellants were notified of the date their positions would be abolished and informed of the effective date of their respective layoffs. They were also placed on the layoff list for priority recall as provided in T.C.A. § 8-30-321. Messrs. Bobbitt, Shelton, and Jones have subsequently been rehired in full-time positions.[7] Mr. Donehew has been rehired as a seasonal employee and Mr. McCallie has applied for and received his retirement benefits.

For the foregoing reasons, the Order of the chancery court is affirmed. Costs of this appeal are assessed equally to the Appellants, Messrs. Bobbitt, Donehew, Jones, Lawson, Shelton, Redmon and McCallie, and their respective sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

---

[7] Mr. Bobbitt was rehired as a Forestry Aid I but was subsequently separated for job abandonment on March 17, 1998.